IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:25-CV-00033-FDW-DCK

NAYELI MORALES OSORIO,
ELIUTH CRUZ CORTEZ,

    Plaintiffs,

v.

KIKA SCOTT, Acting Director, U.S.
Citizenship and Immigration Services;[1]
LAURA B. ZUCHOWSKI, Director of U.S.
Citizenship and Immigration Services,
Vermont Service Center,

    Defendants.

**MEMORANDUM OF LAW
IN SUPPORT**

Comes now Defendants by and through their attorney Russ Ferguson, United States Attorney for the Western District of North Carolina to hereby move this Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for mootness, lack of standing, a lack of subject matter jurisdiction, and failure to state a claim. In support, Defendants submit this memorandum of law with the attachments thereto.

**I.    BOTTOM LINE UP FRONT**

Dismissal is appropriate for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing and their claims are moot. Dismissal is also appropriate per Fed. R. Civ. P. 12(b)(6) because the Plaintiffs' allegations fail to state a claim under the Administrative Procedure Act ("APA") because the adjudication of their petitions for U nonimmigrant status and applications for a waiver of inadmissibility are not improperly withheld

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Defendants give notice of the substitution of Kika Scott, Acting Director of U.S. Citizenship and Immigration Services for Ur M. Jaddou.

or unreasonably delayed, and their allegations are grounded in speculation and disregard for the relevant statutory authority.

Congress has limited the number of principal grants of U nonimmigrant status (hereinafter "U Visas") that can be granted every fiscal year to 10,000, though USCIS receives many more than 10,000 such filings per year. In meeting the statutory cap each year, petitions are processed via a "first-in and first-out method" ("FIFO"). This approach is required by the regulations and applicable policy, acknowledged and upheld by the Courts, and has been deemed a rule of reason. When the new fiscal year began on Oct. 1, 2024, USCIS resumed processing principal petitions for U-1 nonimmigrant status starting with petitions filed on or before Nov. 30, 2016, prioritizing the oldest petitions. This is publicly available information on USCIS' website.

Even if the regulations did not preclude it in this context, courts have also held that moving petitions ahead of others yield no net positive outcome. Not only have Plaintiffs made no showing that there is anything unique to their situation that warrants a different approach, Plaintiffs are beneficiaries of grant of a Bona Fide Determination and were each granted an employment authorization document ("EAD") permitting them to work in the United States through the near end of 2026 and 2027, respectively, as well as Deferred Action making them a lower priority for removal from the United States. Because Plaintiffs seek to skip the line despite a statutory cap placed by Congress and a processing order mandated by regulation, dismissal is appropriate.

## II.  FACTUAL ALLEGATIONS

Plaintiffs Nayeli Morales Osorio and her husband, Eliuth Cruz Cortez, allege that their Form I-918, Petitions for U Nonimmigrant Status, and their Form I-192[2], Applications for Advance Permission to Enter as Nonimmigrants, which serves as an application for a waiver of

---

[2] The Form I-192 is adjudicated with the Form I-918 at the time of final adjudication, which is why it would be included when seeking final adjudication. *See* https://www.uscis.gov/i-192.

inadmissibility, have been "improperly withheld" to their detriment. (Pl. Compl. at 2, *Osorio v. Jaddou et al.,* No.:3:25-cv-00033-FDW-DCK (ECF No. 1, Jan. 16, 2025). Plaintiffs seek a writ of mandamus to compel Defendants to complete the adjudication of their petitions. Plaintiff and her spouse are citizens of Mexico. (Pl. Compl. at 2). Plaintiffs currently reside in the United States. (Pl. Compl. at 4, ¶ 8) ("this action …brought in the District where a Plaintiff resides…"). Plaintiffs' petitions were received by USCIS on May 9, 2017. (Pl. Compl. at Ex. 1).

### III. <u>STANDARD OF REVIEW</u>

#### A. *Lack of Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)*

Federal district courts are courts of limited subject-matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs, Inc.*, 545 U.S. 546, 552 (2005)). A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether a court can adjudicate the claims brought before it. *Hensley v. City of Charlotte*, 2023 WL 2533083 at *1 (W.D.N.C. Mar. 15, 2023) citing Fed. R. Civ. P. 12(b)(1). "[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed. 1998)). *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

When a defendant contends that a complaint fails to allege facts upon which the court can base subject matter jurisdiction, the court assumes as true the factual allegations in the complaint. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If, however, the defendant contends that the jurisdictional allegations contained in the complaint are false, the court may go beyond the allegations of the complaint and conduct an evidentiary hearing to determine if there are facts to

support the court's exercise of jurisdiction over the dispute. *Id*. The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction, the Plaintiff. *Evans v. B. F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999). Also, in considering a motion to dismiss under Rule 12(b)(1), a court may consider evidence extrinsic to the complaint, such as attachments to the movant's memorandum of law. *Lucas v. United States*, No. 2:18-CV-59-FL, 2020 WL 3889444, at *2 (E.D.N.C. Feb. 3, 2020), report and recommendation adopted, No. 2:18-CV-59-FL, 2020 WL 1702224 (E.D.N.C. Apr. 7, 2020), aff'd, 823 F. App'x 176 (4th Cir. 2020).

### B.      *Failure to State a Claim – 12(b)(6)*

A Rule 12(b)(6) motion "tests the sufficiency of the complaint" and "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim." *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013). "To succeed on a statute of limitations defense at this stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013); *Robinson v. Am. Honda Motor Co., Inc*., 551 F.3d 218, 222 (4th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007).

However, courts have also properly considered and taken judicial notice of information on government agency websites. *United States v. Garcia,* No. 3:15-CR-00040-MOC-DSC, 2015 WL 7313425, at *2 (W.D.N.C. Nov. 19, 2015). Federal Rule of Evid. 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Government websites are generally considered "not to be subject to reasonable dispute", including public records and government documents available from reliable sources on the Internet. *United States*

*v. Garcia*, 2015 WL 7313425, at *2. *See also Krebs v. Charlotte Sch. of L.*, LLC, No. 3:17-CV-00190-GCM, 2017 WL 3880667, at *11 (W.D.N.C. Sept. 5, 2017); *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases taking judicial notice of information posted on official public websites of government agencies). Finally, although the court is to take the facts in the light most favorable to the plaintiff, the court need not accept allegations that are contradicted by documents properly designated as exhibits, *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

### C. The Administrative Procedure Act ("APA")

The APA applies, according to the provisions thereof, except to the extent that: (1) statutes preclude judicial review, or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). While the APA provides that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

## IV. THE U VISA PROGRAM AND THE STATUTORY CAP

### A. The U Visa Program

In October 2000, Congress created the U nonimmigrant classification ("the U Visa Program") to provide nonimmigrant status to certain victims of crime who cooperate with law enforcement in the investigation or prosecution of a qualifying crime. *See* Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Pub. L. No. 106-386, 114 Stat. 14648 (2000); 8 U.S.C. §1101(a)(15)(U)(i). Authority over the U Visa Program has been delegated to USCIS. *See* 8 C.F.R. § 214.14(c)(1).

An individual is eligible for a U Visa if the petitioner can show (1) she has suffered

5

Case 3:25-cv-00033-FDW-DCK     Document 6     Filed 05/09/25     Page 5 of 18

substantial physical or mental because as a result of having being a victim of a qualifying crime; (2) she has credible and reliable information about the crime; (3) she has been or is being or is likely to be helpful to law enforcement in investigating or prosecuting the crime; and (4) she is admissible to the United States or has had all grounds of inadmissibility waived. 8 U.S.C. § §1101(a)(15)(U),1182(a); *see also* 8 C.F.R. §§ 214.14(c)(2)(iv), 214.14(c)(iv). A U visa petitioner (principal petitioner) may petition for certain qualifying relatives (derivative petitioners). 8 U.S.C. § 1101(a)(15)(U)(ii). USCIS may approve a derivative petition only if the principal petitioner has been granted U nonimmigrant status. See 8 C.F.R. § 214.14(f)(6)(i).

If USCIS approves a petition for U Visa status, the Form I-918, the petitioner, if in the United States, will receive lawful U nonimmigrant status and employment authorization for up to four years. 8 USC § 1184(p)(6); 8 C.F.R. § 214.14(c)(5)(i)(A), (f)(6)(i).

### B. The U Visa Program's Statutory Cap

Congress has limited USCIS's authority to approve U visas by implanting a 10,000-visa-per-fiscal-year cap. "The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under §1101(a)(15)(U) of this title in any fiscal year shall not exceed 10,000." 8 U.S.C. § 1184(p)(2)(A). This means the number of individuals who may be issued U-1 visas or provided U-1 nonimmigrant status in the United States in any fiscal year, regardless of merit or timing, cannot exceed 10,000. *Id*. Thus, when the statutory cap has been met, USCIS stops processing petitions for final adjudication until the next fiscal year.

### C. Current Status of the Statutory Cap

USCIS has met the statutory cap every year since 2010. See USCIS, *Number of Form I-918 Petitions for U Nonimmigrant Status* (hereinafter "I-918 Chart"). *See* U.S. Citizenship and Immigration Services, Form I-918, Petition for U Nonimmigrant Status, by Fiscal Year, Quarter,

and Case Status ("I-918 Chart") located at: https://www.uscis.gov/sites/ default/files/document/data/i918u_visastatistics_fy2024_q4.xlsx (link opens Excel spreadsheet for downloading) (last accessed May 5, 2025), also attached hereto as Exhibit "A".

In promulgating its regulations concerning U visa petitions, USCIS estimated that it would receive 12,000 principal petitions per year. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53033 (Sept. 17, 2007). However, every fiscal year since 2012, USCIS has received well over 20,000 principal petitions. (I-918 Chart, Ex. A). For fiscal years 2022 and 2023, USCIS received over 30,000 principal petitions. (Ex. A). In Fiscal Year 2024, USCIS received over 40,000 principal petitions. (Ex. A). Currently there are 246,137 pending principal petitions, as of the close of the first quarter of 2025. (Ex. A).

### D.  *Paths Available While Awaiting Adjudication*

There are two (2) paths for petitioners to receive deferred action and employment authorization as they await final adjudication. The first path is the waiting list process[3].

The second path, which is more efficient and has been provided to Plaintiffs, is the Bona Fide Determination (BFD) process, which provides employment authorization and deferred action to petitioners with pending bona fide petitions who merit a favorable exercise of discretion. 8 U.S.C. §1184(p)(6); *See* USCIS, Chapter 5 – Bona Fide Determination Process, Policy Manual, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (hereinafter, USCIS BFD Policy Manual, Chap. 5,).

---

3 When placed on the waiting list, petitioners in the United States are eligible to receive deferred action and employment authorization. See 8 C.F.R. § 214.14(d)(2). The waiting list was created in anticipating that the statutory cap would be met within the first few fiscal years of enactment, USCIS created a regulatory waiting list process. *See* C.F.R. § 214.14(d)(2). A petitioner is placed on the waiting list if a U visa petition is determined to be approvable in all respects but for the fact that a visa cannot be issued due to the statutory cap. *See id*.

The BFD process provides an opportunity for certain petitioners to receive Employment Authorization Documents (EAD) and Deferred Action while their petitions are pending and before a full eligibility review has been conducted. *See* USCIS BFD Policy manual, Chap. 5[4], *supra*. Plaintiffs each received a BFD grant. Plaintiff Osorio received her Bona Fide Determination on 5/4/2022. (USICS Ltr. 5/4/2022) (Ex. B). Plaintiff Cortez received his Bona Fide Determination on 12/16/2022. (USICS Ltr. 12/16/2022) (Ex. C). Each received an EAD on 11/17/2022 and 11/13/2023 respectively, permitting them to work in the United States without removal through 11/16/2026 and 11/12/2027 respectively. *USICS Approval Notice for Nayeli Osorio*, 11/17/2022 (Exhibit D) and *USICS Approval Notice for Eliuth Cruz Cortes*, 11/13/2023 (Ex. E ) (hereinafter "USCIS Approval Notices"). These EADs also granted them Deferred Action.

When the cap is reopened and U visas become available at the beginning of a new fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order of filing date with the oldest filing receiving the highest priority via FIFO), to issue the next 10,000 available U-1 visas. *See* 8 C.F.R. §214.14(d)(2); USCIS, Chapter 7 – Final Adjudication, Policy Manual, located at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7 (last visited 5/7/2025).

For the fiscal year ending 2024, USCIS met the statutory cap on July 22, 2024. https://www.uscis.gov/I-918 (last visited 5/7/2025) (hereinafter "USCIS I-918 Petition Alert"). On the front page of the Form I-918 webpage it reads:

> **ALERT**: As of July 22, 2024, we met the fiscal year 2024 statutory cap of 10,000 aliens who can be issued U-1 nonimmigrant visas or granted U-1 nonimmigrant status per fiscal year. We adjudicated petitions to meet the statutory cap based on filing date, with the oldest petitions receiving highest priority. We have met this cap every year since fiscal year 2010. When the new fiscal year began on Oct. 1, 2024, we resumed approving principal petitions for U-1

---

4 Petitioners who do not receive a favorable BFD process, or are not eligible for a favorable BFD determination, receive a full review through the waiting list process; the first path described, supra. *See id*. However, Plaintiff's received a favorable BFD process.

nonimmigrant status starting with petitions filed on or before Nov. 30, 2016, prioritizing the oldest petitions.

https://www.uscis.gov/I-918 (last visited May 6, 2025).

V. ARGUMENT

A. Mootness and Lack of Standing

This matter is moot because the Court cannot act to offer any relief; USCIS cannot act and Plaintiffs have already received all of the relief to which they are statutorily entitled at this stage. USCIS is restricted by statute, regulation, and policy from adjudicating the Plaintiffs' principal and derivative petitions before those filed earlier in time. Although a U Visa cannot be issued at this moment due to the cap and required processing order, Plaintiffs were provided BFD grants, assurance that they have met the prima facie case for a U Visa, Deferred Action, and Employment Authorization for four years. Hence, the relief Plaintiff is seeking is illusory and dismissal is appropriate.

"Article III of the Constitution permits federal courts to adjudicate only 'actual, ongoing controversies.'" *Honig v. Doe*, 484 U.S. 305, 317 (1988); *See also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 ("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party" quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). For example, as reasoned by another Circuit Court, "even if [the Court] ordered USCIS to issue 80,000 U-visas, the agency would not be able to do so because of the annual statutory cap." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (pointing to the statutory language that "[t]he term 'shall' ... denotes a clear congressional directive," and therefore "USCIS lacks the authority to exceed [the fiscal year limit]." ) citing *Iddir v. INS*, 301 F.3d 492 –501 (7th Cir. 2002)).

It is the agency's "lack of *power* to grant effectual relief—not its lack of *duty*—that makes

the claims nonjusticiable." *Taylor*, 875 F.3d at 854; citing *Iddir* 301 F.3d at 502. The ability to obtain the U visa, the relief Plaintiffs seek, is statutorily limited by Congress. And though USCIS has not yet completed 10,000 grants of U nonimmigrant status during Fiscal Year 2025, it is obligated to conduct those adjudications in date-of-filing order, with the oldest cases receiving the highest priority. 8 C.F.R. § 214.14(d)(2); USCIS Policy Manual, Volume 3, Part C, Ch. 7.

Analysis of the publicly-available data demonstrates Plaintiffs have not yet reached the front of the line for full adjudication and therefore cannot be provided the relief they seek. At the beginning of Fiscal Year 2025, USCIS was considering filings from November 2016 for full adjudication under the statutory cap. *See* USCIS I-918 Petition Alert. Additionally, in Fiscal Year 2017, USCIS received over 37,000 principal U visa petitions. I-918 Chart. Plaintiffs filed their petitions in May 2017. Pl. Compl. at 8, ¶ 21. Even allowing that some petitions are denied every year, the thousands of petitioners who filed during the five-month period after November 2016, but before Plaintiffs filed in May 2017, must be prioritized for adjudication before Plaintiffs. 8 C.F.R. § 214.14(d)(2); USCIS Policy Manual, Volume 3, Part C, Ch. 7. Where, as in this case, further adjudication is precluded by the applicable statute, regulation, and policy, the matter is deemed moot.

Federal courts' jurisdiction also depends on whether a plaintiff has constitutional standing. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Taylor v. Scialabba*, No. 16-CV-10754, 2017 WL 1344536, at *2–3 (N.D. Ill. Apr. 12, 2017), aff'd sub nom. *Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017). Here, Plaintiffs fail as to elements 1 and 3.

10
Case 3:25-cv-00033-FDW-DCK     Document 6     Filed 05/09/25     Page 10 of 18

The Plaintiffs have not experienced, or effectively pleaded, any injury.  Plaintiffs have received a favorable BFD, employment authorization, and deferred action, allowing them to work in the United States for the subsequent four years.  (Ex. A, B, D and E).  Hence, there is no injury.  They have not been removed from the United States, and they are able to work while awaiting a Visa.  They allege no particularity in the Pleading other than the word "detriment".

Similarly to mootness, as to redressability, where the relief sought is illusory, a plaintiff lacks standing.  *Id.*; *Patel v. Rodriguez*, No. 15-CV-486, 2015 WL 6083199, at *5 (N.D. Ill. Oct. 13, 2015).  In *Patel*, the court explained that it was not in dispute that the INA caps the number of U-visas that may be issued to 10,000 per year, and held that because USCIS lacks the authority to exceed it, the court could not redress any harm suffered by the plaintiff.  *Patel*, 2015 WL 6083199, at *5 (citing *Iddir v. INS,* 301 F.3d 492, 501 (7th Cir. 2002)

The same applies here.  The cap has been reached for each fiscal year since 2012; and, at the beginning of the current fiscal year, USCIS was adjudicating applications filed on or before 11/30/2016.  Plaintiffs filed their petitions on May 9, 2017, and the applicable regulations and policy prohibit USCIS from prioritizing them for full adjudication before those who filed earlier in time.  8 C.F.R. § 214.14(d)(2); USCIS Policy Manual, Volume 3, Part C, Chapter 7.  This Court, like the court in *Patel*, is thus unable to provide relief, and accordingly, Plaintiff does not have standing to bring this claim.  *See also Taylor*, 875 F.3d at 854.

### B. Failure to State a Claim

"The Court need not accept the Plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Plaintiffs erroneously alleged that since filing for their U-visas in 2017 they "have never received any other communication or decision on their

petitions". (Pl. Compl. at 9, ¶ 24). Plaintiffs also alleged their applications have been "improperly withheld". *Id*. at ¶ 1). These assertions are based on speculation and not grounded in fact. The fact is the statutory cap limits the number of full adjudications, and the applicable regulation and policy require USCIS to allocate that limited number of full approvals based on date-of-filing order. 8 C.F.R. § 214.14(d)(2); USCIS Policy Manual, Volume 3, Part C, Ch. 7.

The Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim for unreasonably delayed administrative action]. *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. Jan. 16, 2025 2020); *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)). The source of the delay is the most important factor, not the length of any alleged delay. *See Wei Tan v. Gonzalez,* No. 07-cv-00133, 2007 WL 1576108 at * 3 (D. Colo. May 30, 2007); *Saleh v. Ridge*, 367 F.Supp. 2d 508, 512 (S.D.N.Y. Feb. 24, 2005). Here, where the source of the delay is a statutory cap and regulation mandating the processing order, plaintiffs fail to state a claim under the APA. When determining whether a government agency has unreasonably delayed a specific action, courts apply the factors set forth in *Telecomm. Res. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). The factors are:

(1) the time agencies take to make decisions must be governed by a "rule of reason[;]"
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;]
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;]
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] andthe court should also take into account the nature and extent of the interests prejudiced; by delay.[5]

---

[5] The sixth *TRAC* factor, that "the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed," 750 F.2d at 80, operates more as a reminder than a factor for the Court to consider when evaluating an unreasonable-delay claim. Defendant will not discuss it here.

*TRAC*, 750 F.2d at 80.

As to the first TRAC factor, courts have found that the first-in, first-out process USCIS must adhere to in this context constitutes a "rule of reason." *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021); *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020); *A.C.C.S. v. Nielsen*, No. 18-CV- 10759, 2019 WL 7841860, at *4 (C.D. Cal. Sept. 17, 2019). This important TRAC factor weighs in favor of Defendants.

The second *TRAC* factor "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme supplies the rule of reason," *TRAC*, 750 F.2d at 80, also weighs heavily in Defendant's favor. Congress provided no timetable or other indication of the speed with which it expects Defendant to proceed, but it did impose a numeric cap on the number of U visas that Defendant may grant each fiscal year. 8 U.S.C. § 1182(p)(2). Despite USCIS receiving, since 2010, more approvable petitions each fiscal year than it may grant, Congress has not adjusted the cap or imposed any timetable.

The third factor, "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," *TRAC*, 750 F.2d at 80, and fifth factor, "the nature and extent of the interests prejudiced by delay," *id*. at 70, weigh in Defendant's favor because Plaintiffs have received employment authorization and deferred action, both of which are renewable until USCIS issues decisions on their U visa petitions. USCIS Policy Manual, Volume 3, Part C, Chs. 5 and 6. Significantly, Plaintiffs have alleged no specific human health or welfare concern, and have not pleaded the "nature and extent of the interests prejudiced" by the alleged delay.

The fourth *TRAC* factor, "the effect of expediting delayed action on agency activities of a

higher or competing priority," *id*. at 80, weighs in favor of Defendant, considering that Plaintiffs' claims are based purely on the order and timing of USCIS's adjudication of their U visa petitions. An order directing USCIS to allow Plaintiffs to "skip ahead" and displace other U visa petitioners who filed their petitions before Plaintiffs would conflict with the governing regulations and displace other petitioners. Plaintiffs provide no justification for this inevitable result. *In Re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)("In short, we have no basis for reordering agency priorities.").

Finally, the claim for a writ of mandamus is likewise appropriate for dismissal. "Relief under the Mandamus Act and the APA are 'virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty.'" *Taiebat v. Scialabba*, No. 17-cv-0805-PJH, 2017 WL 747460, at *4 (N.D. Cal. Feb. 27, 2017); *Noori v. Blinken*, No. CV 23-1463 (TJK), 2024 WL 939990, at *2 (D.D.C. Mar. 5, 2024) citing *Penn v. Blinken*, No. 21-cv-1055 (TJK), 2022 WL 910525, at *7 (D.D.C. Mar. 29, 2022) ("The standard for reviewing agency delay is the same under both §706(1) of the APA and the Mandamus Act." (cleaned up)).

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant its motion to dismiss per Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted, this the 9th day of May, 2025.

        RUSS FERGUSON
        United States Attorney

        s/Janice Powers
        Janice Powers
        Assistant United States Attorney
        N.C. Bar No. 60504
        227 West Trade Street
        Carillion Building - Suite 1650
        Charlotte, NC 28202

Tel: (704) 344-6222
Fax: (704) 344-6629
Email: janice.powers@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I CERTIFY that the above Memorandum in Support of Motion to Dismiss does not exceed 4,500 words and complies with the word limitations set forth in Paragraph 3(b)(iv) of The Hon. Frank D. Whitney's Standing Order.

                                                  **s/Janice Powers**
                                                  JANICE POWERS
                                                  Assistant United States Attorney

## CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024 and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 9th day of May, 2025.

**s/Janice Powers**
JANICE POWERS
Assistant United States Attorney

EXHIBITS

| Exhibit | Description |
|---|---|
| A | USCIS I-918 Chart |
| B | USCIS Letter to Plaintiff Osorio dated 5/4/2022 (Bona Fide Determination, EAD, and DA) |
| C | USCIS Letter to Plaintiff Cortez dated 12/16/2022 (Bona Fide Determination, EAD, and DA) |
| D | USCIS Letter to Plaintiff Osorio dated 11/17/2022 Employment Authorization Approved until 11/16/2026 |
| E | USCIS Letter to Plaintiff Eliuth Cruz Cortez dated 11/13/2023 Employment Authorization Approved until 11/12/2027 |